[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lycan v. Cleveland*, Slip Opinion No. 2022-Ohio-4676.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4676

LYCAN ET AL., APPELLEES, *v.* THE CITY OF CLEVELAND, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lycan v. Cleveland*, Slip Opinion No. 2022-Ohio-4676.]**

*Administrative law—Appellate review—Res judicata—Automated traffic cameras—Court of appeals' judgment reversed and caused remanded to the trial court.*

(No. 2020-0341—Submitted September 7, 2021—Decided December 29, 2022.)

APPEAL from the Court of Appeals for Cuyahoga County,

Nos. 107700 and 107737, 2019-Ohio-3510.

_____

**KENNEDY, J., announcing the judgment of the court.[1]**

**{¶ 1}** In this discretionary appeal from a judgment of the Eighth District Court of Appeals, we determine whether the payment of a civil fine for a traffic

_____

1. The duty to write this opinion was assigned to the author on December 13, 2022.

violation under a city's automated-traffic-enforcement program without disputing liability for the violation precludes those improperly ticketed under the program from raising a claim of unjust enrichment against the city in a separate action. Appellees are Janine Lycan, Thomas Pavlish, Jeanne Task, Lindsey Charna, Ken Fogle, John T. Murphy, and other members of a class seeking reimbursement for the fines collected by appellant, the city of Cleveland, for traffic violations by vehicle lessees that were recorded by the city's traffic-enforcement cameras. Appellees were issued citations and paid fines under the program, under which only *owners* of vehicles were liable for violations of the city's traffic ordinances. Just before the complaint in this case was filed, the Eighth District held in another case that the city's automated-traffic-enforcement ordinance did not apply to vehicle lessees. *See Dickson & Campbell*, *L.L.C. v. Cleveland*, 181 Ohio App.3d 238, 2009-Ohio-738, 908 N.E.2d 964, ¶ 39, 50, 55 (8th Dist.).

{¶ 2} We determine that because appellees paid their fines without disputing the applicability of the city's automated-traffic-enforcement ordinance to vehicle lessees, appellees were barred by res judicata from raising their subsequent unjust-enrichment claim against the city. Therefore, we reverse the judgment of the court of appeals.

## I. Relevant Background

### A. *The city's automated-traffic-enforcement program*

{¶ 3} Cleveland Codified Ordinances ("CCO") 413.031 authorized the city's use of  traffic-enforcement cameras. CCO 413.031(b) and (c) imposed liability on the "owner of a vehicle" caught on camera committing a red-light or speeding offense. The ordinance formerly defined "vehicle owner" as "the person or entity identified by the Ohio Bureau of Motor Vehicles, or registered with any other State vehicle registration office, as the registered owner of a vehicle." Former CCO 413.031(p)(3). At the times relevant in this case, however, the city included

2

vehicle lessees in its administrative definition of "owners" and sent vehicle lessees tickets for camera-detected violations.

{¶ 4} Under the city's automated-traffic-enforcement adjudication system, any ticket generated by an automated traffic camera (1) was reviewed by a Cleveland police officer, (2) was sent by first-class mail to or was personally served at the address of the registered owner of the vehicle, and (3) specified the manner in which the ticket could be appealed. CCO 413.031(h). The ordinance imposed a $100 fine for red-light violations, a $100 fine for speeding violations of up to 24 miles per hour over the speed limit, a $200 fine for speeding violations of 25 miles per hour or more over the speed limit, and a $200 fine for any speed violation committed in a school zone or construction zone. CCO 413.031(o). There were no criminal penalties for traffic violations detected by the cameras under the program. CCO 413.031(i).

{¶ 5} As for appeals under the program, the vehicle owner had to file a notice of appeal with the hearing officer within 21 days of the date listed on the ticket. CCO 413.031(k). The ordinance provided: "The failure to give notice of appeal or pay the civil penalty within this time period shall constitute a waiver of the right to contest the ticket and shall be considered an admission." *Id.* The ordinance set forth the procedure for appealing a ticket, stating: "Appeals shall be heard by the Parking Violations Bureau through an administrative process established by the Clerk of the Cleveland Municipal Court. * * * The contents of the ticket shall constitute a prima facie evidence of the facts it contains. Liability may be found by the hearing examiner based upon a preponderance of the evidence." *Id.* After a person had gone through the city's administrative process, the person could appeal the hearing officer's decision to the common pleas court pursuant to R.C. 2506.01.

{¶ 6} One entity similarly situated to appellees followed that procedure to its endpoint. In *Dickson & Campbell*, 181 Ohio App.3d 238, 2009-Ohio-738, 908

3

N.E.2d 964, a law firm received two speeding tickets under the city's automated-traffic-enforcement program and then participated in the administrative-hearing-and-appeal process through its completion in the Eighth District. The firm disputed the hearing officer's conclusion that CCO 413.031 applied to vehicle lessees. *Dickson & Campbell* at ¶ 1-5, 54-55. The Eighth District held that based on the plain meaning of the phrase "vehicle owner," *id.* at ¶ 39, CCO 413.031 did not impose liability on vehicle lessees, *id.* at ¶ 51. After the court of appeals' decision in *Dickson & Campbell*, the city amended CCO 413.031 to state that "vehicle owner" includes the "lessee" of a leased or rented vehicle, CCO 413.031(p)(4).

### B. The class action

{¶ 7} The underlying case is a class action that followed the decision in *Dickson & Campbell*. Plaintiffs in the class action and appellees here—who were vehicle lessees who received tickets under the city's automated-traffic-enforcement program—did not appeal their cases to the parking-violations bureau; most paid the $100 civil fine upon receiving the ticket.

{¶ 8} For example, in 2006, Lycan, the first named plaintiff in the class-action suit, received from the city a notice of liability stating that an automated-traffic-enforcement camera had photographed her vehicle violating the city's speeding ordinance. She paid the fine, admitting liability under the citation. In 2009, on behalf of herself and other vehicle lessees who had been ticketed under the program, Lycan filed a motion for class certification. As relief, appellees sought the following: (1) disgorgement of the fines paid to the city, under an unjust-enrichment theory, (2) an injunction preventing the city from enforcing the ordinance against vehicle lessees, and (3) declaratory judgment that the city wrongfully possessed appellees' money.

### C. A brief history of the litigation and the city's defenses

{¶ 9} The amended complaint in this case was filed in 2009. This court has issued one prior decision in the case, *Lycan v. Cleveland*, 146 Ohio St.3d 29, 2016-

Ohio-422, 51 N.E.3d 593 ("*Lycan III*"). In that decision, this court set forth the procedural history of the case to that point, which included two prior decisions by the Eighth District: *Lycan v. Cleveland*, 8th Dist. Cuyahoga No. 94353, 2010-Ohio-6021 ("*Lycan I*"), *overruled in part by Lycan III*; and *Lycan v. Cleveland*, 2014-Ohio-203, 6 N.E.3d 91 (8th Dist.) ("*Lycan II*"), *rev'd in part by Lycan III*. *Lycan III* at ¶ 7-18. We repeat that history below.

{¶ 10} In *Lycan I*, the Eighth District reversed the Cuyahoga County Common Pleas Court's dismissal of appellees' claims for restitution and declaratory relief, reversed the trial court's denial of appellees' class-certification motion, and determined that appellees' failure to challenge their fines before paying them did not necessarily foreclose appellees from proving a set of facts under which it could be deemed unjust for the city to retain the payments. *Id.* at ¶ 5-11.

{¶ 11} On remand from *Lycan I*, the city argued in the trial court that the character of its notices of liability, combined with appellees' opportunity to participate in the administrative-appeal process, constituted quasi-judicial administrative proceedings from which the preclusive effect of res judicata arose. But on February 8, 2013, the trial court granted partial summary judgment to appellees. That decision was two sentences long. In the first sentence, the trial court simply granted appellees' motion for partial summary judgment without providing any reasoning. In the second sentence, the trial court set a hearing date for appellees' class-certification motion. The city did not seek an interlocutory appeal of the order.

{¶ 12} On February 19, 2013, the trial court held a hearing regarding appellees' motion for class certification. On February 26, 2013, the trial court granted appellees' motion for class certification for the following class: "All persons and entities who were not a 'vehicle owner' under CCO 413.031 but were issued a notice of citation and/or [assessed] a fine under that ordinance, prior to [M]arch 11, 2009, by/or on behalf of Defendant, City of Cleveland."

**{¶ 13}** R.C. 2505.02(B)(5) allows an immediate appeal of a class-certification order, and the city used that opportunity to appeal the trial court's February 26, 2013 order to the Eighth District, *see Lycan II*, 2014-Ohio-203, 6 N.E.3d 91, at ¶ 12. The city's assignments of error raised two arguments: (1) that appellees had failed to meet the class-action requirements under Civ.R. 23 and (2) that res judicata precluded class relief. *Lycan II* at ¶ 12.

**{¶ 14}** The Eighth District addressed the merits of the city's res judicata argument in *Lycan II*. The court of appeals concluded that appellees' failure to pursue administrative relief did not bar their class action "because there was never an actual 'judgment' rendered by a court, or administrative tribunal, of competent jurisdiction." *Id.* at ¶ 15. Moreover, the court noted, even if an administrative decision had been rendered, the city's parking-violations bureau could not have decided appellees' unjust-enrichment and declaratory-judgment claims. *Id.* The court declined to follow what it termed the "expansive view of res judicata" set forth in *Carroll v. Cleveland*, 522 Fed.Appx. 299 (6th Cir.2013), *abrogated on other grounds as stated in Harrison v. Montgomery Cty.*, 997 F.3d 643 (6th Cir.2021), and *Foor v. Cleveland*, N.D.Ohio No. 1:12 cv 1754, 2013 WL 4427432 (Aug. 15, 2013). *Lycan II* at ¶ 14. The court concluded that "fairness and justice would not support the application of res judicata in this case." *Id.* at ¶ 19. It proceeded to address the city's challenge to the trial court's grant of class certification, concluding that the class met all the requirements under Civ.R. 23 for certification and affirming the trial court's class-certification order. *Lycan II* at ¶ 47-48.

**{¶ 15}** In *Lycan III*, 146 Ohio St.3d 29, 2016-Ohio-422, 51 N.E.3d 593, this court concluded that appellees had satisfied the requirements for class certification under Civ.R. 23 but determined that the Eighth District had erred in *Lycan II* by addressing the city's res judicata defense in the absence of a final, appealable order

from the trial court on that question. *Lycan III* at ¶ 32. Accordingly, this court remanded the case to the trial court for further proceedings. *Id.*

{¶ 16} On remand, the city moved for summary judgment and for reconsideration of the trial court's February 8, 2013 order granting partial summary judgment to appellees. The trial court ruled in favor of the class, awarded the class $4,121,185.89, and denied the class's request for an additional award of $1,842,563.51 for the "time value" regarding the funds that had been wrongfully withheld.

{¶ 17} The city appealed the trial court's judgment to the Eighth District, arguing, among other things, that the trial court had erred in granting summary judgment in favor of appellees because the class had failed to "exhaust the administrative process" before filing the class-action suit and because the class was "barred from proceeding by principles of res judicata and collateral estoppel." The Eighth District affirmed the trial court's judgment, concluding that appellees were not required to exhaust the administrative remedies under the ordinance prior to pursuing a judicial remedy, because participation in the administrative-hearing process would have been futile, 2019-Ohio-3510, 142 N.E.3d 210, ¶ 24, and that the city had waived its res judicata argument, *id.* at ¶ 33. The court of appeals pointed to the city's statement in its motion for reconsideration and for summary judgment that it "does not re-litigate the issue of res judicata with the motion." 2019-Ohio-3510 at ¶ 31.

{¶ 18} We accepted the city's discretionary appeal on two propositions of law. *See* 159 Ohio St.3d 1427, 2020-Ohio-3473, 148 N.E.3d 569 (accepting for review the city's first proposition of law); 160 Ohio St.3d 1449, 2020-Ohio-5239, 156 N.E.3d 912 (accepting for review the city's second proposition of law). The city's propositions of law are as follows:

Proposition of Law No. 1: Ohio municipalities have home-rule authority to establish civil camera enforcement administrative proceedings which include administrative hearings. Individuals who have declined to participate in the adequate remedy at law available to them in the available administrative hearing process have failed to exhaust their administrative remedies as a matter of law and are thereby precluded from seeking judicial remedy including claims for unjust enrichment. (*Accord Walker v. Toledo*, 143 Ohio St.3d 420, 2014-Ohio-5461, 39 N.E.3d 474).

Proposition of Law No. 2: A final judgment occurs for purposes of applying the res judicata doctrine when individuals who have received a civil traffic camera citation issued pursuant to a municipal ordinance knowingly admit to the violation through payment of the civil penalty without contesting the citation by participating in the established administrative appeal process. (*Accord Carroll v. Cleveland*, 522 Fed.Appx. 299 (6th Cir.2013)).

{¶ 19} Because we determine that appellees' claims are barred by res judicata, we resolve the case based on the second proposition of law. Therefore, we decline to address the first proposition of law.

## II. Law and Analysis

{¶ 20} Appellees chose to *admit their liability* for traffic violations recorded by the city's automated-traffic-enforcement cameras through the administrative procedure that the city had in place and forewent the opportunity to dispute the city's ability to ticket vehicle lessees under CCO 413.031. Res judicata prevents appellees from litigating in this action the issue whether they were properly cited in the first instance. The argument that they were not liable as vehicle lessees was available to appellees at the administrative level. The argument has been raised

8

successfully by a similarly situated lessee of a vehicle caught committing traffic violations by a city traffic-enforcement camera. *See Dickson & Campbell*, 181 Ohio App.3d 238, 2009-Ohio-738, 908 N.E.2d 964, at ¶ 1-5, 39, 50, 55. And that lessee followed the administrative-appeal process available under CCO 413.031. *Dickson & Campbell* at ¶ 1-5.

### A. Standard of review

{¶ 21} "Application of the doctrine of res judicata/collateral estoppel to a particular issue is a question of law. *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 174 Ohio App.3d 135, 2007-Ohio-6594, 881 N.E.2d 294, ¶ 41 (10th Dist.). Accordingly, it is reviewed under a de novo standard of review, i.e., without deference to the lower court's decision. *Rossow v. Ravenna*, 11th Dist. Portage No. 2001-P-0036, 2002 WL 480061 (Mar. 29, 2002)." *State v. Hill*, 177 Ohio App.3d 171, 2008-Ohio-3509, 894 N.E.2d 108, ¶ 37 (11th Dist.).

### B. Res judicata

{¶ 22} "The doctrine of res judicata involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel)." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381, 653 N.E.2d 226 (1995). This case involves claim preclusion. Claim preclusion makes " 'an existing final judgment or decree between the parties to litigation * * * conclusive as to all claims which were or might have been litigated in a first lawsuit.' " *Natl. Amusements, Inc. v. Springdale*, 53 Ohio St.3d 60, 62, 558 N.E.2d 1178 (1990), quoting *Rogers v. Whitehall*, 25 Ohio St.3d 67, 69, 494 N.E.2d 1387 (1986).

{¶ 23} "[C]laim preclusion has four elements in Ohio: (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second

action arising out of the transaction or occurrence that was the subject matter of the previous action." *Hapgood v. Warren*, 127 F.3d 490, 493 (6th Cir.1997).

*C. Application of the res judicata factors*

**1. Prior final, valid decision**

**{¶ 24}** The first factor for determining whether res judicata applies is whether there was a prior final, valid decision on the merits by a court of competent jurisdiction. *Id.* This court has held that "[t]he doctrine [of res judicata] applies to administrative proceedings." *State ex rel. Washington v. Indus. Comm.*, 112 Ohio St.3d 86, 2006-Ohio-6505, 858 N.E.2d 353, ¶ 11; *see also State ex rel. Schachter v. Ohio Pub. Emps. Retirement Bd.*, 121 Ohio St.3d 526, 2009-Ohio-1704, 905 N.E.2d 1210, ¶ 29 ("Res judicata, whether claim preclusion or issue preclusion, applies to quasi-judicial administrative proceedings").

**{¶ 25}** In *Walker v. Toledo*, 143 Ohio St.3d 420, 2014-Ohio-5461, 39 N.E.3d 474, *superseded by statute as stated in State ex rel. Magsig v. Toledo*, 160 Ohio St.3d 342, 2020-Ohio-3416, 156 N.E.3d 899, this court acknowledged that at the time the tickets at issue in this case were generated, municipalities could use an administrative process to address protests to liability for traffic-camera-related tickets. *See id.* at ¶ 3. This court held that "Ohio municipalities have home-rule authority to establish administrative proceedings, including administrative hearings, related to civil enforcement of traffic ordinances" and that "these administrative proceedings must be exhausted before offenders or the municipality can pursue judicial remedies." *Id.* Later, the General Assembly amended R.C. 1901.20(A)(1) and gave municipal courts " '*exclusive* jurisdiction over every civil action concerning a violation of a state traffic law or a municipal traffic ordinance.' " (Emphasis added in *Magsig*.) *Id.* at ¶ 11, quoting R.C. 1901.20(A)(1).

**{¶ 26}** But before the change to R.C. 1901.20(A)(1) went into effect, such an administrative process was the forum for contesting traffic-camera-generated

tickets or admitting liability for the violations by paying a civil fine. Appellees here all participated in the city's forum when they admitted their liability by paying their civil fines. And under the city's process, a person who exhausted the administrative-appeal process and then wished to dispute the hearing officer's conclusion could appeal that decision to the common pleas court under R.C. 2506.01. In *State ex rel. Scott v. Cleveland*, 112 Ohio St.3d 324, 2006-Ohio-6573, 859 N.E.2d 923, ¶ 15, this court recognized that "the civil hearing process provided by [CCO] 413.031(k) involves the exercise of quasi-judicial authority." Res judicata operates to prevent the relitigation of claims that were considered and determined—*or that could have been considered and determined*—in a prior action. *State ex rel. B.O.C. Group v. Indus. Comm.*, 58 Ohio St.3d 199, 200, 569 N.E.2d 496 (1991).

{¶ 27} That appellees decided to take a shortcut in the administrative process does not mean that they did not participate in the process. They chose an available route: to not dispute their tickets and pay their fines. And in doing so, they ended the case between themselves and the city. They could have contested their tickets at the administrative level and, if they were unsuccessful, appealed the administrative decision to the common pleas court, as did the plaintiffs in *Dickson & Campbell*, 181 Ohio App.3d 238, 2009-Ohio-738, 908 N.E.2d 964, at ¶ 1-3. But appellees did not do so.

{¶ 28} In *Carroll*, 522 Fed.Appx. 299, the United States Court of Appeals for the Sixth Circuit addressed the same ordinance at issue in this case, CCO 413.031, and considered whether the ordinance applied to vehicle lessees who had been ticketed under the ordinance and had paid their fines rather than appealing through the city's administrative process. *Carroll* at 300-301. The *Carroll* plaintiffs asserted that the fines that the city had collected were unconstitutional takings under state and federal law. *Id.* at 300. The court of appeals concluded that claim preclusion barred the plaintiffs' claims. *Id.* at 304-307. The court explained

11

that claim preclusion " 'is * * * applicable to actions which have been reviewed before an administrative body, in which there has been no appeal made pursuant to R.C. 2506.01.' " (Ellipsis added in *Carroll*.) *Id.* at 303, quoting *Wade v. Cleveland*, 8 Ohio App.3d 176, 456 N.E.2d 829 (8th Dist.1982). Regarding the question whether there had been a final judgment, the court in *Carroll* likened vehicle lessees who had simply paid their civil fines under CCO 413.031 to parties who had settled their claims in a civil case: "Just as claim preclusion applies to a party who settles a civil case and later attempts to litigate claims that she could have pursued in the case that she settled, so too does it apply to [a]ppellants who, instead of contesting their citations, conceded civil liability by paying their fines." *Carroll* at 304.

{¶ 29} We agree with the Sixth Circuit's reasoning. Therefore, we determine that the city's administrative process, whereby appellees chose not to contest their tickets and paid their civil fines, satisfied the requirement of "a prior final, valid decision on the merits by a court of competent jurisdiction," *Hapgood*, 127 F.3d at 493.

### 2. Same parties

{¶ 30} The second factor for determining whether res judicata applies is whether there is a second action involving the same parties as the first action. *Id.* The parties in the class-action suit are the same parties as those at the administrative level: vehicles lessees who were ticketed under CCO 413.031 and the city of Cleveland.

### 3. Raising claims that could have been asserted in the first action

{¶ 31} The third factor involves whether the subsequent action raised claims that were or could have been litigated in the first action. *Hapgood* at 493. Appellees could have litigated at the administrative level the issue whether CCO 413.031 is inapplicable to vehicle lessees, as did the plaintiffs in *Dickson & Campbell*, 181 Ohio App.3d 238, 2009-Ohio-738, 908 N.E.2d 964. Based on *Dickson & Campbell*, we know that appellees could have been successful in raising

that defense at the administrative level. *See id.* at ¶ 55. And if they had raised issues outside those that the hearing officer was authorized to decide, such as constitutional issues, they could have appealed and raised those issues to the common pleas court and then to the court of appeals if necessary. *See, e.g.*, *Pivonka v. Corcoran*, 162 Ohio St.3d 326, 2020-Ohio-3476, 165 N.E.3d 1098, ¶ 24.

**4. Action arising out of the transaction or occurrence that was the subject matter of the previous action**

**{¶ 32}** Finally, in evaluating whether res judicata applies, we must determine whether the second action arose out of the same transaction or occurrence as the previous action. *Hapgood*, 127 F.3d at 493. The class action here and the administrative proceedings all emanated from appellees' having received tickets because a traffic-enforcement camera recorded their leased vehicles involved in the violation of a traffic ordinance. The only difference in this action is that appellees apparently have the benefit of knowledge that another vehicle lessee went through the administrative process and then obtained a judgment determining that CCO 413.031 did not apply to vehicle lessees. *See generally Dickson & Campbell*.

*D. Waiver*

**{¶ 33}** The Eighth District held that the city waived its res judicata argument by abandoning it below. It explained: "Following the Ohio Supreme Court's remand in *Lycan III*, [146 Ohio St.3d 29, 2016-Ohio-422, 51 N.E.3d 593,] the City never raised the res judicata argument, nor did it ask the trial court to rule on this issue." 2019-Ohio-3510, 142 N.E.3d 210, at ¶ 31. The court of appeals noted: "In fact, in its motion for reconsideration and motion for summary judgment, the City specifically stated that it 'does not re-litigate the issue of res judicata with the motion.' " *Id*.

**{¶ 34}** But the city's res judicata argument existed in the case from near the beginning, when it was mentioned in a footnote in a motion for summary judgment

in 2012. And in *Lycan III*, this court held that the Eighth District's ruling in *Lycan II*, 2014-Ohio-203, 6 N.E.3d 91, on the res judicata issue following the remand in *Lycan I*, 2010-Ohio-6021, was not a final appealable order. *Lycan III* at ¶ 24. Therefore, the city's statement in its motion for reconsideration and for summary judgment in the trial court that it "does not re-litigate the issue of res judicata" was appropriate—it did not need to relitigate it. It was already argued in the trial court and decided by that court and still needed to be determined by the court of appeals. Before the city's "not re-litigate the issue" statement, it set forth in its motion for reconsideration and for summary judgment what this court had done in *Lycan III*: vacated the Eighth District's judgment with respect to the res judicata issue and remanded the case to the trial court for further proceedings. *Id.* at ¶ 32. During the September 7, 2016, hearing on the city's motion for reconsideration, the trial court asked the city's counsel, "[Y]ou're saying then that you still have the ability to argue standing and res judicata in your motion for summary judgment regardless of not discussing or having that argument before the Supreme Court. You don't believe it's waived, it's part of the argument that you would make in your motion for summary judgment?" The city's counsel responded, "That's correct, Your Honor."

{¶ 35} The issue was still live following the trial court's 2013 partial grant of summary judgment that this court held was not a final order on the res judicata issue in *Lycan III*. The trial court's 2013 judgment would become final and appealable on the issuance of a final order; but the issue was still preserved and was ripe for appeal when the city filed its noninterlocutory appeal following remand from the R.C. 2505.02(B)(5) class-action-certification interlocutory appeal.

{¶ 36} Following remand from this court in *Lycan III*, 146 Ohio St.3d 29, 2016-Ohio-422, 51 N.E.3d 593, the trial court denied the city's motion for summary judgment in a one-line entry. The Eighth District concluded that the city had waived its res judicata argument, when in fact it had never been properly reviewed

14

on appeal. *See* 2019-Ohio-3510, 142 N.E.3d 210, at ¶ 33. As noted above, the city first raised the argument in a motion for summary judgment when the case was on remand to the trial court following the Eighth District's decision in *Lycan I*, 2010-Ohio-6021. *See Lycan III* at ¶ 13. We find no waiver of the res judicata issue in this case, just an unnecessarily protracted resolution. *See id.* at ¶ 33-35 (Kennedy, J., dissenting).

{¶ 37} Appellees argue that the city waived its res judicata defense by failing to plead it in a responsive pleading in the trial court. But the city did plead in its answer to appellees' amended complaint that "[p]laintiffs are collaterally estopped from filing suit." The res judicata issue was before the trial court following the remand in *Lycan I*, was decided substantively by the court of appeals in *Lycan II*, and was considered once before by this court in *Lycan III*, in which this court determined that the court of appeals had improperly considered the issue for lack of a final, appealable order. No court in this case has determined that the city waived its res judicata defense by failing to specifically plead it in a responsive pleading. We decline to do so here.

### III. Conclusion

{¶ 38} By paying their civil fines and not disputing their liability under CCO 413.031, appellees admitted their liability for their traffic violations recorded by the city's automated-traffic-enforcement cameras. That ended the case between appellees and the city as to those incidents. Res judicata prevents a subsequent lawsuit based on CCO 413.031's inapplicability to vehicle lessees. The four requirements for res judicata to apply were met in this case: (1) appellees' original admissions of liability constituted prior final, valid decisions on the merits by a court of competent jurisdiction; (2) the second action involved the same parties; (3) the second action raised claims that were or could have been litigated in the first actions; and (4) the second action arose out of the same occurrences that were the subject matter of the previous actions.

**{¶ 39}** We therefore reverse the judgment of the court of appeals and remand the matter to the trial court to enter judgment in favor of the city.

Judgment reversed

and cause remanded.

FISCHER and DEWINE, JJ., concur.

STEWART, J., concurs in judgment only.

O'CONNOR, C.J., dissents, with an opinion joined by DONNELLY and BRUNNER, JJ.

_____

**O'CONNOR, C.J., dissenting.**

**{¶ 40}** The lead opinion determines that appellees'[2] payment of their civil fines under appellant the city of Cleveland's automated-traffic-enforcement system constituted admissions to their traffic violations and were final judgments, such that appellees' unjust-enrichment claims against the city are barred by res judicata. Because I disagree with the conclusion that res judicata applies to appellees' claims, I dissent.

**{¶ 41}** Under the doctrine of res judicata, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382, 653 N.E.2d 226 (1995). The lead opinion determines that appellees' payment of their civil fines for their traffic citations satisfied the requirement of a "a prior final, valid decision on the merits by a court of competent jurisdiction," *Hapgood v. Warren*, 127 F.3d 490, 493 (6th Cir.1997), for purposes of res judicata. It reasons that by paying the civil fines,

2. Appellees are Janine Lycan, Thomas Pavlish, Jeanne Task, Lindsey Charna, Ken Fogle, John T. Murphy, and other members of a class who filed suit challenging the fines imposed against vehicle lessees by appellant, the city of Cleveland, for traffic violations recorded by the city's automated-traffic-enforcement cameras.

appellees "ended the case between themselves and the city," lead opinion, ¶ 27, a case that never started. And it says that because appellees *could* have contested their citations through the city's administrative process rather than paying their fines, that mere possibility operates as a valid, prior judgment for res judicata purposes.

{¶ 42} It has been said that

"the doctrine of res judicata is to be applied in particular situations as fairness and justice require, *and that it is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice.* * * * Underlying all discussion of the problem must be the principle of fundamental fairness in the due process sense. The public policy underlying the principle of res judicata must be considered together with the policy that a party shall not be deprived of a fair adversary proceeding in which to present his case."

(Emphasis and ellipsis added in *Grava.*) *Id.* at 386 (Douglas, J., dissenting), quoting 46 American Jurisprudence 2d, Judgments, Section 522, at 786-787 (1994), and citing *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 202, 443 N.E.2d 978 (1983).

{¶ 43} The lead opinion suggests that appellees should have challenged their citations by appealing them to the city's parking-violations bureau, as did the law-firm plaintiff in *Dickson & Campbell, L.L.C. v. Cleveland*, 181 Ohio App.3d 238, 2009-Ohio-738, 908 N.E.2d 964, ¶ 1-3 (8th Dist.). But according to evidence submitted by appellees, while the *Dickson & Campbell* proceedings were pending but before the court of appeals issued its decision in that case, Dickson & Campbell, L.L.C., the plaintiff in that case, received two delinquency notices from the city stating that the failure to respond to its citations had resulted in a $20 penalty and

17

warning that the continued failure to respond would result in an additional $40 fee, increasing the original fine to $160. The notices also stated that Dickson & Campbell had forfeited its right to appeal based on its "failure to respond to the first notification." The firm also received a "credit rating warning" stating that its "delinquent obligation" would be reported to a national credit bureau unless payment of the delinquent amounts was received within 30 days of the notice. These penalties were assessed despite the firm's having pursued an appeal of its citations through the city's administrative procedures. *See Dickson & Campbell* at ¶ 2-4.

{¶ 44} Thus, according to the lead opinion, the only path available to appellees to avoid the application of res judicata and to recover the fines the city had improperly collected from vehicle lessees under the city's program was for appellees to subject themselves to an expensive and lengthy legal process while receiving threats about the validity of their legal actions, threats of increased penalties, and negative hits to their credit scores. This is hardly an example of a "fair adversary proceeding" for which the doctrine of res judicata was meant to endorse.

{¶ 45} The lead opinion also cites the decision of the United States Court of Appeals for the Sixth Circuit in *Carroll v. Cleveland*, 522 Fed.Appx. 299 (6th Cir.2013), *abrogated on other grounds as stated in Harrison v. Montgomery Cty.*, 997 F.3d 643 (6th Cir.2021). Similar to this case, *Carroll* involved a class-action lawsuit based on traffic citations that had been issued to vehicle lessees under Cleveland Codified Ordinances ("CCO") 413.031 and for which the plaintiffs had paid their civil fines rather than challenging them through administrative appeals. *Carroll* at 300-301. The *Carroll* plaintiffs had challenged the fines that the city had collected as unconstitutional takings under state and federal law. *Id.* at 300. The *Carroll* court held, "Payment of the fines, and acceptance of that payment by the City, qualifies as a final judgment." *Id.* at 304.

**{¶ 46}** Appellees argue that *Carroll* is an aberration and that the federal court in that case misconstrued Ohio law. *Carroll* is not an officially published decision and, as such, it is not binding on the federal courts. *See Harrison* at 651. Moreover, it is not controlling authority on this court. *See Kelly v. Ford Motor Co.*, 104 Ohio App. 185, 194, 139 N.E.2d 99 (8th Dist.1957). It is also unpersuasive.

**{¶ 47}** In *Carroll*, the federal court likened the payment of the civil fine to the entry into a settlement decree in a civil case and, therefore, held that it constituted a final disposition. *Id.* at 304. It also made the following conclusion regarding the effect of admitting liability by paying a civil fine: "Had they chosen to contest the citations, [plaintiffs] would have received ample opportunity to develop the facts surrounding their citations and to present their arguments about the statute's constitutionality, first in an administrative proceeding, then in the Ohio court system." *Id.* That presumptuous conclusion describes a plaintiff's obligation to exhaust administrative remedies, not whether a valid, final judgment on the merits exists for res judicata purposes. Moreover, for the following reasons, the federal court's description of the nature of the proceedings in *Carroll* does not hold up against the facts in this case.

**{¶ 48}** First, although one might assume it is logical to equate the payment of the civil fine with an admission of liability, appellees here were presented with a Catch-22 situation. On one hand, the notices of liability stated that payment of the civil fine would constitute an admission to the alleged traffic violation. On the other hand, CCO 413.031(k) stated: "The failure to give notice of appeal or pay the civil penalty within [the 21-day] time period shall constitute a waiver of the right to contest the ticket and shall be considered an admission." That language suggests that *by paying* the civil penalty, appellees *preserved* their ability to appeal the citation and contest liability.

**{¶ 49}** Second, contrary to the federal court's observation in *Carroll*, there was hardly "ample opportunity" for appellees to develop the facts and present legal

arguments in an administrative proceeding. Appellees have not contested that they were driving the cars when the automated cameras photographed them nor have they contested that they committed the traffic violations. Indeed, they even admit they were the vehicles' lessees. Rather, they maintain that the city's issuance of citations against vehicle lessees was unlawful. But the city had decided as a matter of law that CCO 413.031 was enforceable against vehicle lessees. Thus, there were no facts or legal arguments to develop until the city's practice of citing vehicle lessees under the automated-traffic-enforcement program was determined to be unlawful in *Dickson & Campbell*, 181 Ohio App.3d 238, 2009-Ohio-738, 908 N.E.2d 964, at ¶ 54-55, a case decided after the time for appellees to initiate an administrative appeal had expired. Thus, this is unlike the unconstitutional-takings argument that the plaintiffs in *Carroll* asserted.

{¶ 50} As the federal court acknowledged in *Carroll*, application of res judicata requires the existence of " 'a prior final, valid decision *on the merits by a court of competent jurisdiction*.' " (Emphasis added in *Carroll*.) *Id.*, 522 Fed.Appx. at 303, quoting *Hapgood*, 127 F.3d at 493. In my view, we cannot say that the mere payment of the civil fines under these circumstances constituted a decision *on the merits by a court of competent jurisdiction*. Therefore, the doctrine of res judicata does not bar appellees' claims of unjust enrichment.

{¶ 51} For the foregoing reasons, I dissent.

DONNELLY and BRUNNER, JJ., concur in the foregoing opinion.

_____

Bashein & Bashein Co., L.P.A., W. Craig Bashein, and John P. Hurst; Paul W. Flowers Co., L.P.A., Paul W. Flowers, and Louis E. Grube; and The Dickson Firm, L.L.C., and Blake A. Dickson, for appellees.

Mark D. Griffin, Cleveland Director of Law, and Craig J. Morice, Assistant Director of Law, for appellant.

Mayle, L.L.C., and Andrew R. Mayle, in support of neither party, for amicus curiae Susan Magsig.

Dworken & Bernstein Co., L.P.A., Patrick J. Perotti, and Frank A. Bartela, urging affirmance for amicus curiae Allyson Eighmey.

Dworken & Bernstein Co., L.P.A., Patrick J. Perotti, and Frank A. Bartela, urging affirmance for amicus curiae Nell Lindsay.

Garry E. Hunter, General Counsel, Ohio Municipal League; and Frost Brown Todd, L.L.C., Philip K. Hartmann, Yazan S. Ashrawi, and Christopher D. Thomas, urging reversal for amicus curiae Ohio Municipal League.

Bricker & Eckler, L.L.P., and Quintin F. Lindsmith, urging reversal for amicus curiae Redflex Traffic Systems, Inc.

_____